Case number five for argument today is United States v. Betty. All right, it looks like we now have Mr. Merrill, and we are ready to proceed in United States v. Betty. Mr. Merrill. Yes, good morning, your honors, and may it please the court and thank you for the accommodation with respect to Zoom. I spend part of my time in Utah and live in Provo, and I'm here, and right before I was heading to the airport yesterday, there was the shooting, which is about 20 minutes from here and in between where I live in the airport, and it was very, very difficult to get to the airport. I tried, but it was unsuccessful, so thank you for that. So we're here on a relatively simple issue, and that is where Mr. Betty's, did the district court accurately calculate Mr. Betty's sentencing guidelines? That, of course, is an important procedure, and whether or not that procedure was followed, accurate procedures, adequate procedures were followed, is, of course, subject to de novo review by this court. We're, on appeal, there are two primary guidelines issues that affected Mr. Betty's calculations. One related to whether or not his counts or four counts that he pled to and whether the counts could be grouped. In the PSR, which the court accepted, there was an error, and the error simply said that under 3D1.2, this is sentencing guideline, D, that there are certain sections that are excluded from that subsection. The PSR and the court accepted that that exclusion applied to the entire section, including subsections A through C, whereas it's clear under the law that we've cited and under the language of 3D1.2 that those exclusions apply only to D. Now, so the court should have considered the grouping rules under 3D1.2B and C. Had it done so, that would have saved Mr. Betty three points. And under the guidelines that the court calculated, he ended up with life guidelines range, and it would have brought him down to 292 to 365. And our submission is that makes a huge difference in terms of courts in these types of cases. He's frequently sentenced below the guidelines range because these types of charges end up... Now, if I understand correctly, the judge asked whether Betty had any objection to the guidelines calculation, and counsel said no. Why isn't that the end? Why isn't that waiver? Well, it's not waiver because earlier in the hearing, the court had said the first issue we're going to consider is Mr. Betty's objection to double counting under the guidelines, and this is part of what that double counting objection was. His counsel went through an argument, and the court rejected that argument. And then the court said, you can nonetheless still argue that as a sentencing factor, but for purposes of today's sentencing, I'm rejecting that argument. So, excuse me, Mr. Merrill. We've got two separate double counting arguments, right, that you're making. One of them is sort of a general 3D1.2, 4B1.5. It's the same conduct, and we had some older case law that said avoid double counting, but it's pretty clear under the guidelines that unless there's a prohibition, you can and should double count, worry about those effects under 3553A. Did Mr. Betty and his counsels make this specific argument about grouping under 3D1.2B and C in the sentencing argument or memorandum? No. So that's your best argument then is forfeiture and plain error on that, right? Mm-hmm. That's not an objection that was actually withdrawn, or made or not withdrawn or withdrawn, whatever, right? Yes. I think the best way to put it is that counsel below made a generic double counting argument, presumably didn't catch the error that we're pointing out in the reply, and so the court never dealt with that issue. Okay. And so if the court viewed double counting, a general double counting argument, as insufficient to preserve... I can tell you as a former district judge, I would certainly not treat that as having raised the specific issue as something that I needed to address. That puts you in plain error territory, I think. But could I ask you to address a point the government made, which was that there actually were offsetting errors here in essence, that under 2G2.2C1, I'm going to delete irrelevant language, if the offense involved... And this is the receiving child pornography offense. If the offense involved causing a minor to engage in sexually explicit conduct for the purpose of a visual depiction of such conduct, then use the 2G2.1 guideline. That certainly seems to fit the facts here. Go ahead. Yeah, that was never raised in the PSR or by the government below. Right. But you're raising stuff that was never raised below. So the question ultimately is, how do we use our... Is this a situation where we need to send it back, particularly since nobody thought the guidelines were actually very helpful here? Well, in that situation, I don't believe that that guideline would necessarily apply. Why not? Because I think it's clear that... Can you just tell me, Your Honor, that I've got the wrong guideline in front of me. Did you say 2G2.2C1 from the 2018 book? Yes. And I think the other reason is that this didn't involve notice or advertisement. That has never been... It doesn't have to. That's an or. If the offense involved causing a minor to engage in sexually explicit conduct, and this photograph would certainly count, for the purpose of producing a visual depiction of such conduct, like a photograph, then you use 2G2.1, and that removes some of the double-counting effect that you're talking about. So you've made your point. Yes. Thank you, Your Honor. But under this, we believe there were several errors. That was certainly one of them, the one we pointed out initially, and that if that, the court, district court, were to agree with us, if this were to be remanded, then that could save Mr. Betty three points. The other error is under 2G2.1, which applied to count two, and in its subsections B2, where his calculation was enhanced for the commission of a sexual act. It's pretty clear. That's what was asserted in the PSR. That's what the court accepted below. There was never any discussion of... There was never any discussion of that, but would you agree with me that what is set forth with respect to that satisfies the statutory definition of sexual contact, which refers to any person? It appears to do so, Your Honor. I would agree. So what's the harm? Well, the harm is that there are several factors that we believe that the court got wrong. The other one is the court allowed the government or the government argued to, you know, a couple of facts that were not anywhere in the record, were extremely... You're shifting to an entirely different issue, but I can go there with you. On those two points, the victim's attempted suicide and the defendant's attempts to contact other minors. Both of those points were made on the record, and the defendant expressly agreed with one of them and made no effort to dispute the other. Why should we treat this as a due process violation? I don't believe the record indicates he expressly agreed. It was at the long end of a long soliloquy by the government, most of which involved information that he had pled to and was in the PSR, and then the government snuck in these two points, and just generically, the court said, do you agree with the government's version of the offense? Now, we believe counsel should have objected, but it was obviously prejudicial that counsel did not and prejudicial that these things came up, and so we don't think he was specifically agreeing with those two points, because the one point is, in fact, not true. She did not attempt suicide. The records, at best, you know, hearsay within hearsay support that she was hospitalized for suicidal ideation, and that's simply not the same. I see I'm out of time, Your Honor. Thank you very much, Mr. Merrill. Mr. Kinstra. May it please the Court. Good morning, Your Honors. Jeff Kinstra on behalf of the United States. Beginning with the defendant's objections to the pattern and grouping enhancements, at the outset, the defendant waives his objection here by expressly telling the district court that these two enhancements themselves were correct. This is really the clearest category of waiver that exists, because this isn't a case of inaction or silence on the defendant's part. It's not a case of acquiescence or even a rote response of no objection to a broad inquiry. Here at the sentencing hearing, defense counsel specifically addressed these very enhancements, and in doing so, told the district court that they were both correct. Defense counsel told the district court on page three of the sentencing transcript that the counts are not able to group. She also said that the defendant receives three-level enhancement under the grouping rules, plus a five-level enhancement for the pattern enhancements, and then she said that that constitutes a correct application of the guidelines. At that point, the district court, recognizing that counsel was conceding her point, asked if this was actually a 3553-A argument that she's making, and counsel agreed, effectively then withdrawing her argument. Now, the defendant notes that the defendant had previously objected to the pattern enhancements. Now, that pertained only to the pattern enhancements, not the grouping rules, but that really just reinforces the case for waiver here, because it shows that counsel was aware of this enhancement, that she considered objecting, and initially did object, but then made an intentional choice to withdraw that objection, and of course, an intentional choice is what is central to the waiver analysis. And so, when you have an instance like that, where defense counsel's explicitly telling the district court that this is correct, and affirmatively advancing that position, the defendant waives any contrary argument on appeal. Now, of course, at that point, any inquiry into strategy isn't unnecessary, but there was a strategic reason here, because the counsel's approach to sentencing was to get the district court to just disregard the guidelines range altogether, and instead focus on the much lower statutory sentence of range, because no matter what, the guidelines range was going to be much higher than the range that the defendant was seeking. And so, by just disregarding the guideline range, that helped the defendant's that the court should instead look to the statutory range. And on top of that, counsel used her agreement to the three-level pattern enhancement as leverage, and as the premise for her arguments, that the court should instead back out the entire five-level pattern enhancement. So, she agreed to the grouping, and argued that the court should account for that combination by backing out the entire five levels, instead of just three levels, and the court did that. It was a successful strategy, because the court agreed with both of those arguments. The court disregarded the guidelines, and looked instead to the much shorter statutory sentencing ranges. It also said that the guidelines, it accounted for the combination of the three levels under the grouping rules, plus the five-level pattern enhancement, by subtracting out the whole five levels for the pattern enhancement. It said that the sentence it imposed was within the middle of that range. So, in a circumstance like this, strategy is not necessary, but it was present here as well. So, this court need not even go through the analysis of plain error. On the merits, of course, it's only plain error, because the defendant never made the grouping argument that he's making on appeal, and he can't satisfy any of the four prongs there, for a number of reasons. The first is that his subsection B argument is raised for the first time in his reply brief, so it's waived for that reason. All this before the court, then, is the subsection C argument, and his fundamental point there is that he should receive a lower guideline range for committing and being convicted of an additional offense, which is exactly contrary to how the guidelines say that their grouping rules should be applied. It would be unusual, granted. What's wrong, technically, though, with the language of 3D1.2B and C applying here? So, B cannot apply because the guideline applies only when there are multiple acts that cause the same composite harm. As courts have recognized, when there are multiple instances of sexual abuse and sexual exploitation, each of those instances inflicts a distinct harm on the victim. So, I'm looking at B. When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan, sure looks like that fits here. The application note specifically says that that applies only in the instance where the multiple acts inflict the same composite harm on the victim, and so it gives examples of, I think the one given in B is where there are different robberies. There's an example elsewhere in the application notes about different instances of rape, and so the courts recognize that in those examples, each instance of that sort of offense inflicts its own harm on the victim, and therefore grouping is not proper on that basis. Okay. I'm going to just think out loud for a minute because we've got one sexual encounter between the defendant and this victim. That's correct. And then we have the pictures. Correct. Pictures, we tend to group together, right, for a lot of sentencing purposes? Certainly for possession, receipt, not for production. For production, the defendant is causing the victim to engage in sexually explicit conduct and to take... So, the defendant takes five pictures within five seconds. That's five separate harms, no grouping allowed. So, that would be a rare case where grouping may be appropriate for production. What courts have said there is when you have multiple images taken of essentially an uninterrupted sequence of acts, that grouping may be appropriate under B, but that's not the case here because the images themselves are separated by over 12 hours. The defendant made his request for those images over 48 hours apart. The images themselves depicted different types of sexually explicit conduct and involved intervening conduct by the victim. And so, these are two different instances of sexually explicit conduct that the defendant caused the victim to engage in. And so, grouping would not be appropriate under B. As to C, again, the guidelines, subsection C applies only when the conduct is, in fact, treated as a specific offense characteristic to another count. And here, essentially, we have a case where if a tree falls in a forest and no one's there to hear it, does it actually make a noise? Here, nominally, the five-level pattern enhancement applied to count two, but it had absolutely no effect and was not actually treated as a specific offense characteristic in that circumstance. That's essentially what this court said in Bucco, where it held that grouping was not appropriate where the enhancement in did not actually affect the analysis. And here, it's really a more perverse outcome that the defendant is seeking because he's arguing that he should receive a lower guideline range for committing and being convicted of this additional offense. On top of that, as Your Honor has recognized, of course, the government agrees that count four should have cross-referenced 2G2.1. At that point, there is no pattern enhancement at all. The entire premise for the defendant's And certainly, the government did not raise that argument itself in the district court, but the defendant did not raise his arguments either. And so, it goes both ways there. To briefly touch on the defendant's other arguments, the sexual contact enhancement was proper. The undisputed conduct described in the pre-sentence report clearly satisfies the requirements in the provision that the offense involved a sexual act or sexual contact. Now, the defendant latches on to the use of the word sex act in the pre-sentence report, but the pre-sentence report didn't purport to use either of the terms of our academic guideline. It simply described the conduct itself, that conduct satisfies the provision. As to the defendant's claim that the court relied on inaccurate information, again, the government's position there is that the defendant waived his objection because he made a choice not to contest the harm the victim suffered because defense counsel well that the government's statement was accurate as it was. Defense counsel made clear through her statements at sentencing that she knew that she was very familiar with the discovery and the victim's condition as reflected in those materials. In fact, she herself made arguments outside of the record based on her review of those materials, so she knew what they reflected about the victim's status. And with that knowledge, she chose to address that point by the government only by arguing about the defendant's proportionate share of responsibility for the victim's suffering without suggesting any disagreement at all with what that suffering entailed. And of course, the reasons for that are obvious. The defendant is seeking lenience here for his acceptance responsibility. The least advantageous thing he could do would be to put more information before the court about the suffering that the victim endured as well as to jeopardize his acceptance by contesting facts he knew to be true. Regardless, the defendant can't show any reliance on this because he relies purely on statements by the government, not anything the court said. Everything the court said here was fully supported by the record and as relevant here by defense counsel's own statements. The defendant refers to the district court's reference to how an offense like the defendant's can contribute to and compound all the stresses the victim faced. Defense counsel said exactly that. She said the defendant is certainly part of what the victim is right now. She also said that the defendant accepts his role or responsibility for his role in that and therefore that supported the district court's statements. Unless your honors have any further questions, we ask this court to affirm. Thank you, counsel. The case is taken under advisement and Mr. Merrill, we thank you for your willingness to accept the appointment in this case. Thank you. We're now ready for the